UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEARON SHARP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 11-cv-4622 |
| ILLINOIS STATE TOLL HIGHWAY | ) |
| AUTHORITY and | ) Judge John W. Darrah |
| TROOPERS JOHNSON and | ) |
| TSAMBIKOU, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Kearon Sharp ("Sharp") brings this action against her former employer, the Illinois State Toll Highway Authority (the "Tollway"), alleging gender and age discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Sharp also has asserted a false arrest claim, in violation of 42 U.S.C. § 1983, against State Troopers Torrence Johnson and Dimitrios Tsambikou (together, the "ISP Defendants"). The Tollway and the ISP Defendants have moved for summary judgment on Sharp's Amended Complaint.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and, in the case of any disagreement, to specifically reference the "affidavits, parts of the record, and other supporting materials relied upon." *See Schrott v.*

*Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Rule 56.1(b)(3)(C) further permits the nonmovant to submit additional statements of material facts that "require the denial of summary judgment."

A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 deems those facts admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *see also Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (the district court has discretion to require strict compliance with its local rules governing summary judgment). Accordingly, to the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

## FACTS

The following facts are taken from the Rule 56.1 statements of undisputed facts filed by the Tollway and the ISP Defendants. Although Sharp, a *pro se* plaintiff, did not file formal responses to the Defendants' statement of facts, she disputes certain of those facts in her memoranda. In this respect, Sharp's responses will be construed as a response to certain of the Defendants' statements of facts. However, Sharp has not responded to a large portion of the Defendants' statements of facts. Although the filings of *pro se* litigants are subject to more liberal review and interpretation, a *pro se* plaintiff must still comply with local rules. *See Dale v.*

*Poston*, 548 F.3d 563, 568 (7th Cir. 2008) ("Judges, of course, must construe *pro se* pleadings liberally. But procedural rules cannot be ignored.") (internal citations omitted).

Local Rule 56.2 requires a party moving for summary judgment against a party proceeding *pro se* to issue a letter with their motion, describing the proper manner for responding in opposition to the motion. The ISP Defendants have issued a Local Rule 56.2 letter to Sharp. (*See* Dkt. # 50.) When a *pro se* litigant is provided with a Local Rule 56.2 letter, then she is presumed to be on notice of her obligations under Local Rule 56.1, and failure to comply with that Rule results in the admission of the moving party's facts. *See Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002). Therefore, Sharp's failure to dispute certain facts set forth in the Defendants' statements in the manner required by Local Rule 56.1 means those facts — if they are consistent with the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1 — are deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Sharp is a female, over forty, and a resident of Cook County. The Tollway is an instrumentality and administrative agency of the State of Illinois that constructs, operates and maintains a system of toll highways and has more than fifteen employees. (Defendant Tollway's Statement of Material Facts ("TSOMF") ¶ 3.) Defendant Torrence Johnson was a Trooper of the Illinois State Police, and Defendant Dimitrios Tsambikou was a Special Agent of the Illinois State Police during all times relevant to this lawsuit. Both Johnson and Tsambikou were acting under the color of law and within the scope of their employment during all times relevant to this lawsuit.

Sharp was hired by the Tollway on June 18, 1995. (TSOMF ¶¶ 1, 6.) She was employed as a Senior (full-time) Toll Collector and assigned to Plaza 41. (TSOMF ¶ 7.) She was also a

member of Service Employees International Union Local 73 ("SEIU") and her employment was therefore subject to, among other things, a Collective Bargaining Agreement (the "CBA") between the Tollway and SEIU. (TSOMF ¶ 8.)

It is established Tollway policy that violence in the workplace, in either acts or threats of violence, is prohibited and will result in discipline up to and including discharge. The Tollway's Personnel Policy and Procedures Manual (the "Policy Manual") sets forth rules of conduct and expectations of behavior for Tollway employees. (TSOMF ¶ 10; Exhibit A ¶ 5.) The Policy Manual provides, in relevant part: "Infractions of the rules of conduct include, but are not limited to, the following and may result in disciplinary action, up to and including discharge: fighting or threatening violence in the workplace." Additionally, the Policy Manual provides: "The Tollway prohibits acts of threats of violence by any Tollway employee against Tollway employees, customers, visitors or members of the public. The Tollway will take disciplinary action up to and including discharge against any Tollway employee who commits an act of violence or engages in threatening behavior." Finally, the Policy Manual provides: "The Tollway requires all employees to report to their supervisor any violent or threatening or suspicious activities." (TSOMF ¶ 11.)

The Tollway's policy for more than twenty years has been a near zero tolerance for violence or threats of violence in the work place. The Tollway policy has been that if there is credible evidence to support an accusation of violence or threatening behavior, the employee is suspended during the investigation, and, if the charge is substantiated and the Tollway determines there is just cause, the employee will be discharged. However, on rare occasions when the evidence is weak and the Union aggressively contests the just cause of the discharge, the Tollway has entered into last chance agreements with counseling. (TSOMF ¶ 12.)

Sharp received a copy of the Tollway's Policy Manual and was informed of the possible consequences of violence in the workplace. (TSOMF ¶¶ 9, 13.)

*Plaintiff's Alleged September 12, 2009 Threat*

On September 12, 2009, Sharp was working as a Toll Collector at Plaza 41. (ISP Defendants' Statement of Material Facts ("ISOMF") ¶ 7.) On a break, she visited the toll collection booth of her co-worker, Zakiyyah Gifford, to change a twenty dollar bill. (*Id.* ¶ 8.) According to a report written by Gifford and submitted to the Tollway, Sharp seemed upset and said she was mad at another co-worker, George Jackson. (TSOMF Exh. D.) According to the report, Sharp further told Gifford that "she was going to get her nephews to bust his [Jackson's] head." Gifford thought it was a joke, until Sharp repeated, three times, that "I'm not playing, I'm going to get them to bust his head, watch what I tell you." Sharp then ended her statements by saying, "they was going to before, but [I] stopped them." Gifford believed that Sharp "really meant it." (TSOMF ¶ 14.) Gifford also informed her supervisor that Sharp made a threat against Jackson. (ISOMF ¶ 11.)

*The ISP Defendants' Investigation of Sharp's Alleged Threat*

The Illinois State Police (the "ISP") were subsequently contacted about the alleged threat made by Sharp. (ISOMF ¶ 13.) On September 24, 2009, the ISP Defendants approached Sharp and identified themselves as police officers. (*Id.* ¶ 13.) The ISP Defendants met with Sharp in the employee break room at Plaza 41 and explained that they were conducting an investigation of an alleged threat. (*Id.* ¶ 14.) During the interview, Sharp denied that she made a threat against Jackson and further stated that she felt Jackson made fun of her because of her Christian faith.

5

(*Id.* ¶¶ 15-16.)[1] After the ISP Defendants finished their interview with Sharp, they told Sharp that they were going to continue their investigation and speak with other employees. (*Id.* ¶ 17.) Sharp filled out a Voluntary Statement form that the ISP Defendants had given her. (*Id.* ¶ 18.)

The ISP Defendants then interviewed Jackson. During the interview, Jackson said Gifford came up to him on the evening of September 12, 2009, and told him that Sharp said she was going to send her nephews to attack him. Jackson signed a Voluntary Statement stating that Sharp "stated she was going to get her nephews to bust my head. This caused me to feel this is an unsafe work environment." (*Id.* ¶¶ 19-21.)[2]

The ISP Defendants next interviewed Gifford, who corroborated Jackson's allegation against Sharp. Gifford said that Sharp would get her nephews to bust his head and that Sharp made the statement three times. (*Id.* ¶ 22.) The ISP Defendants prepared reports and documented the interviews, pursuant to practice of the ISP. (*Id.* ¶ 28.) Jackson then signed a Misdemeanor Complaint for assault against Sharp. (*Id.* ¶ 26.)

After the interviews, the ISP Defendants found Jackson and Gifford's statements reasonably trustworthy and determined there was probable cause to arrest Sharp for assault in violation of 720 ILCS 5/12-1(a). (*Id.* ¶ 23.) The ISP Defendants processed Sharp's arrest at Plaza 41, and she was issued an individual bond and released. (*Id.* ¶ 27.)

After her arrest, Sharp was "Suspended Pending Investigation." (TSOMF ¶16.) Sharp then provided a written response and was subsequently discharged for violence in the workplace on October 29, 2009. (TSOMF ¶16; *see also* Plaintiff's Complaint.) Sharp filed a grievance, but the Union dismissed it because, in Sharp's words, "the Local 73 Union said I didn't have any

---

[1] Prior to September 12, 2009, Sharp had reported Jackson to the Tollway management for making fun of her. (ISOMF ¶ 10.)
[2] Jackson has not engaged in or threatened violence in the workplace. (TSOMF ¶ 22.)

6

witnesses." (TSOMF ¶ 17.) The misdemeanor charge against Sharp was ultimately dismissed when Jackson failed to appear for the scheduled court date on November 6, 2009. (ISOMF ¶ 29.)

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

**ANALYSIS**

*Sharp's 1983 Claim Against the ISP Defendants*

Sharp has asserted a false arrest claim, in violation of 42 U.S.C. § 1983, against the ISP Defendants. To succeed on this claim, Sharp must prove that the ISP Defendants lacked probable cause when they arrested her for assault. *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011) (*Mucha*).

Probable cause exists when "the facts and circumstances" within the officer's knowledge at the time of the arrest "are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (*Kelley*) (internal quotations and modifications omitted). Probable cause is an objective inquiry; thus, the Court "evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (internal quotations omitted). Furthermore, probable cause "requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Mucha*, 650 F.3d at 1056-57.

Here, the undisputed material facts show that the ISP Defendants had probable cause to believe that Sharp had committed the crime of assault by threatening Jackson. Under Illinois law, a person commits assault "when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1 (2013). The ISP Defendants interviewed the alleged victim, Jackson, and a corroborating witness, Gifford, who both specifically identified Sharp and reported to the ISP Defendants that Sharp made a specific and serious threat of violence. The statement by a reasonably credible

victim alone generally is enough for an arrest. *See Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) ("[W]e have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause."); *see also McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (*McBride*) ("Normally, an officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth.") The ISP Defendants properly relied on both the statements of the victim and a corroborating witness in arresting Sharp.

In an extremely short response, Sharp contends that there is an issue of disputed fact because Sharp denied making threats to Jackson during her interview with the ISP Defendants. She further claims that the ISP Defendants "did not do their due diligence in investing [*sic*] the facts to determine if the statements were actually made." (*See* Plaintiff's Resp. to ISP Defs.' Motion for Summary Judgment.) Sharp has offered no facts or law that would support her argument. There is no evidence that the ISP Defendants should have discredited the statements of Jackson (the victim) and Gifford (the witness) over the statement of Sharp (the alleged suspect). *See McBride,* 576 F.3d at 708.

Because there is no genuine issue of material fact whether the ISP Defendants had probable cause to arrest Sharp, summary judgment is properly granted in the ISP Defendants' favor.

*Qualified Immunity*

The ISP Defendants contend that even if they did not have actual probable cause to arrest Sharp, they are entitled to qualified immunity. In a false arrest case, a police officer is protected from liability under qualified immunity if a "reasonable officer could have mistakenly believed

9

that probable cause existed." *Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (7th Cir. 2012) (citations omitted). Known as "arguable probable cause," this defense may be established when:

> a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.

*Id.* (citations omitted) (emphasis in original).

In this case, the undisputed material facts show that the ISP Defendants reasonably believed that there was probable cause to arrest Sharp. The ISP Defendants were dispatched to investigate a reported crime by Sharp; they interviewed all of the individuals involved in the alleged threat; and they found the statements by the alleged victim and witness that Sharp had threatened violence to be credible. (ISOMF ¶¶ 12-23.) Under these facts and circumstances, the ISP Defendants could have reasonably believed there was probable cause, even if they were ultimately mistaken. Consequently, summary judgment in favor of the ISP Defendants is appropriate.

*Sharp's Title VII Gender Discrimination Claim against the Tollway*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, prohibits employment discrimination on the basis of gender. Sharp alleges that the Tollway discriminated against her on the basis of her gender when the Tollway terminated her.

A plaintiff can establish a claim of discrimination under Title VII under the direct or the indirect method of proof. *Winsley v. Cook Cnty.,* 563 F.3d 598, 604 (7th Cir. 2009) (*Winsley*). Under the direct method, she must present direct evidence that the conduct of which she complains was the result of discriminatory animus (essentially, an admission by the employer),

*Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003), or by presenting circumstantial evidence that creates "a convincing mosaic of discrimination." *Winsley,* 563 F.3d at 605.

Here, Sharp does not argue that she can prove discrimination under the direct method. She has not presented any direct evidence of discriminatory animus, nor has she presented any circumstantial evidence that creates "a convincing mosaic of discrimination" on the part of the Tollway. Consequently, to defeat the Tollway's motion, Sharp must proceed under the indirect, burden-shifting method of proof.

Under the indirect method, a plaintiff must establish all four elements of a *prima facie* case of discrimination: (1) membership in a protected class; (2) performance meeting the employer's legitimate expectations; (3) an adverse employment action; and (4) similarly situated employees outside of the protected class who were treated more favorably. *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007) (*Hossack*); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). If the plaintiff satisfies this burden, the employer then has the burden to articulate a legitimate, nondiscriminatory reason for its decision. *Hossack*, 492 F.3d at 860. The plaintiff may then challenge that reason as a pretext for discrimination. *See also Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009) (*Coffman*).

The Tollway concedes that Sharp belongs to a protected class in that she is female and that she suffered an adverse employment action when she was fired.[3] The Tollway contends that Sharp cannot prove the second element that she was meeting the Tollway's legitimate expectations. The Tollway argues that Sharp was aware of the Tollway's policy against violence

---

[3] The Tollway also states that Sharp belongs to another protected class in that she is an African-American but notes that Sharp has not alleged discrimination based on race. (*See* Tollway Mem. in Supp. of Mot. for Summ. J. at 6.)

and that she violated that policy when she threatened Jackson with violence. (*See* Tollway Mem. in Supp. of Mot. for Sum. J. at 6.) In support of this argument, the Tollway points to the following: Gifford's statement about Sharp's threat (TSOMF Exh. D); Jackson's criminal complaint against Sharp (TSOMF Exh. E); and the Tollway investigation of the alleged threat and subsequent discharge of Sharp for the threat (TSOMF Exh. F).

In a very short response brief, Sharp claims that there are disputed issues of material fact but provides no evidence for her argument. In fact, she acknowledges that Gifford alleged that Sharp threatened Jackson and also acknowledges that Jackson filed a sworn complaint against Sharp. (Plaintiff's Resp. to Tollway's Mot. for Sum. J ("Resp.").) Sharp does not argue that the Tollway had any reason to disbelieve Gifford's statement or Jackson's complaint as the basis for discharging Sharp for violence. Rather, Sharp complains that she was "never given an opportunity to go to counseling." She also points to Jackson's failure to pursue his complaint against her and states that "[e]ven after the complaint was dismissed [for failure to prosecute], Tollway did not offer Plaintiff her job back." (*Id.*) Neither the Tollway's failure to provide counseling or its failure to offer Sharp her job back upon the dismissal of Jackson's complaint for failure to prosecute creates a genuine issue of material fact. Sharp has not met her burden that she was meeting the Tollway's legitimate expectations of performance.

Sharp also has not established the fourth element of a *prima facie* case: that a similarly situated employee not in a protected class was treated more favorably than she was. The Seventh Circuit has explained that "[s]imilarly situated employees must be directly comparable to the plaintiff in all material respects." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (*Coleman*) (internal quotations and citations omitted). The purpose of this analysis is "to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or

decision-making personnel, which helps isolate the critical independent variable' — discriminatory animus." *Id.* (quoting *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007)).

Sharp appears to argue that Ron Levens, a "white male" over forty, was treated better than she was when he "made inappropriate comments to another employee over the intercom and destroyed Tollway property," and then later, "made threats to do bodily harm to an employee at the Plaza." (Resp. at 3.) Sharp's argument regarding Levens does not create an issue of material fact. As the documents attached to Sharp's Response demonstrate, Levens was, in fact, discharged for threatening violence in the workplace. (*See* Resp., Exh. 3.) He was only later reinstated because of an arbitration award under the CBA. As Levens received the same discipline as Sharp – termination for threatening violence – he is not a proper comparable. Sharp has identified no other males that she contends were treated better than she was for purposes of her gender discrimination claim.[4] As Sharp has not stated a *prima facie* case under the indirect method and has failed to shift the burden to the Tollway, the issue of pretext does not need to be addressed.

Because Sharp cannot establish a claim for gender discrimination under either the direct method or the indirect method of proof, her gender discrimination claim against the Tollway fails, and summary judgment in the Tollway's favor is appropriate.

*Sharp's Age Discrimination Claim Against the Tollway*

Sharp has also asserted a claim for age discrimination in violation of the ADEA against the Tollway. The same standard articulated above for Sharp's gender discrimination claim

---

[4] Sharp appears to have dropped the allegation made in her Amended Complaint that Jackson, the alleged victim, was treated better than she was.

applies to Sharp's age discrimination claim. *See, e.g., Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2002) (*Grayson*) (addressing both Title VII and the ADEA claims of discrimination). Consequently, to prevail on her ADEA claim, Sharp must either present direct evidence that age was a determining factor in her discharge or by indirectly establishing that fact through the *McDonnell Douglas* burden-shifting approach discussed above. *Grayson*, 317 F.3d at 748. Sharp's age discrimination claim fails for the same reason that her gender discrimination claim fails: specifically, that she cannot prove she was meeting the Tollway's legitimate expectations, and for the separate reason that she has not shown similarly situated persons outside her class were treated better than she was.

Sharp has presented no direct evidence of age discrimination by the Tollway and, therefore, must proceed under the indirect method. The Tollway again concedes that Sharp, as being over forty years of age, is a member of a protected class and that she suffered an adverse employment action by her termination. For the reasons discussed above, Sharp cannot establish that she was meeting the Tollway's legitimate expectations when she violated the Tollway's policy by threatening Jackson with violence.

Likewise, Sharp has not identified any similarly situated persons outside her protected class that were treated better than she was. In her response to the Tollway's motion, Sharp has identified one person younger than forty, Elycia Boyd, who Sharp alleges threatened Sharp with bodily harm but was not terminated. However, as explained by the Tollway and not contested by Sharp, the incident with Boyd was materially different from Sharp's threats of violence. Sharp submits and relies on the same documents relied upon by the Tollway, including a January 25, 2007 memorandum from the Plaza Manager, Barbara Galvan. (*See* Resp. Exh. 5.)

In her memo, Galvan states that Boyd called Galvan on December 19, 2006, and said that Boyd was "quite upset with Sharp saying she wanted Galvan to 'do something before [Boyd] had to whoop [Sharp].'" Galvan made Boyd promise she would behave until Galvan could speak to her supervisor. (*Id.*) That memo is the only writing containing the alleged "threat" to Sharp by Boyd.

The Tollway explains that Boyd's statement to Galvan was not an actual threat but a request for management's intervention in an escalating interpersonal conflict between Sharp and Boyd.[5] The Tollway has submitted an affidavit by Jeffrey Redding, the Chief of Toll Operations for the Tollway. In that affidavit, Redding states that the Tollway investigated "the Boyd-Sharp incident" and determined that "there was no actual threat of [imminent] violence and the statement was a request for the Tollway to intervene before the situation escalated." (TSOMF Exh. A.) Sharp fails to rebut or contest this explanation of the Tollway's treatment of Boyd. Furthermore, there is no evidence that Sharp had any fear of being hit by Boyd. Boyd's frustrated and apparently off-the-cuff expression of "do something before I whoop her" materially differs from Sharp's multiple statements to Gifford that she would have her nephews "bust Jackson's head" and that she "meant it." Sharp has failed to show that any similarly situated employees outside her protected class were treated better than she was.[6]

Sharp cannot establish a claim for age discrimination against the Tollway, and, therefore, this claim must be dismissed, as well.

---

[5] Indeed, the documents submitted and relied upon by Sharp show that there was a deep conflict between Sharp and Boyd. (*Id.*)

[6] As with her gender discrimination claim, Sharp has not stated a *prima facie* case under the indirect method, and, therefore, the issue of pretext does not need to be addressed.

## CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment [49, 53] are granted. The civil case is terminated.

Date:  April 11, 2013                             /s/ John W. Darrah
                                                  JOHN W. DARRAH
                                                  United States District Court Judge